**Slip Op. 06-7**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                                          :
UNITED STATES OF AMERICA,                 :
                                                          :
         Plaintiff,                            :
                                                          :
         v.                                        :  Court No. 05-00284
                                                          :
FORD MOTOR COMPANY,                           :
                                                          :
         Defendant.                           :
_____:


[Defendant's Motion to Dismiss is granted.  Case dismissed.]


      Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (David A. Levitt); of counsel: Kathleen Bucholtz, United States Customs and Border Protection, for the United States, plaintiff.

      Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Robert B. Silverman, David M. Murphy, Steven P. Florsheim, Robert F. Seely, and Frances P. Hadfield); of counsel: Paulsen K. Vandevert, for Ford Motor Company, defendant.

                                   January 13, 2006


**OPINION**

      **TSOUCALAS, Senior Judge:**  Ford Motor Company, ("Ford"), defendant, moves for dismissal pursuant to USCIT R. 12(b) on the grounds that (1) issue preclusion prevents the Bureau of Customs and Border Protection of the Department of Homeland Security

("Customs")[1], plaintiff, from litigating the current action and (2) the statute of limitations has run on Customs' claims before the present action was initiated.  Specifically, Ford contends that Customs is barred from litigating the present action under the doctrine of issue preclusion as they are disregarding previous court findings on the same issues, factual findings and conclusions.  Ford further asserts that the statute of limitations bars Customs from seeking penalties and duties as no valid waiver was in place when Customs commenced the present action.  Customs responds that the litigation is not barred under the doctrine of issue preclusion as previous court findings do not settle the present question of penalties.  Customs further responds that a valid waiver of the statute of limitations did exist when it filed the case at bar.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1582 (2000).

---

[1]     The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

**STANDARD OF REVIEW**

A court should not dismiss a complaint for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Halperin Shipping Co., Inc. v. United States, 13 CIT 465, 466 (1989).  Moreover, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.  See United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  A pleading that sets forth a claim for relief must contain "a short and plain statement" of the grounds upon which jurisdiction depends and "of the claim showing that the pleader is entitled to relief . . . ."  USCIT R. 8(a).  "To determine the sufficiency of a claim, consideration is limited to the facts stated on the face of the complaint, documents appended to the complaint, and documents incorporated in the complaint by reference."  Fabrene, Inc. v. United States, 17 CIT 911, 913 (1993).  Accordingly, the Court must decide whether plaintiff is entitled to offer evidence in support of its claim, and not whether plaintiff will prevail in its claim.  See Halperin, 13 CIT at 466.

**DISCUSSION**

## I.  Background

This action involves eleven entries of engines and transmissions ("Complaint Entries").  See Mem. Law Supp. Def.'s Mot. Dismiss ("Ford's Mem.") at 1; Mem. Opp'n Def.'s Mot. Dismiss Compl. ("Customs' Mem.") at 5.  In 1983, Ford applied to the Foreign Trade Zone Board ("FTZ Board") for approval in establishing a Foreign Trade Subzone ("FTSZ") in Louisville, Kentucky.  See Ford's Mem. at 3; Customs' Mem. at 2.  The FTZ Board granted Ford's request in 1984.  See Ford's Mem. at 4; Customs' Mem. at 2.  A FTSZ is a geographic area located within the United States that can be treated as being outside the customs territory of the United States.  See Ford's Mem. at 3; Customs' Mem. at 2.  Importers can choose to pay duties on goods either at the rate applicable to the foreign merchandise upon admission to the area, or on the emerging product if used in manufacturing within the FTSZ.  See id.; Customs' Mem. at 2.

In 1985 and 1986, the duty rate on finished imported cars was 2.6 percent ad valorem while the duty rate for foreign-made engines and transmissions was 3.3 percent ad valorem.  See Ford's Mem. at 3; Customs' Mem. at 2.  The duty rate on finished imported trucks was 25 percent ad valorem.  See Ford's Mem. at 3; Customs' Mem. at 5.  Ford intended to take advantage of the duty differential

between the parts and the completed car through an "inverted tariff program" by admitting car engines and transmissions into the FTSZ as foreign merchandise.  See Ford Mem. at 3-4; see also Customs' Mem. at 2.  The merchandise would then be incorporated into finished cars within the FTSZ and subsequently be withdrawn for entry into the United States.  See id.; see also Customs' Mem. at 2.  Ford was required to file Customs Form ("CF") 214 in order to obtain the inverted tariff benefit by designating all car parts as "non privileged foreign" ("NPF") and all truck parts as "privileged domestic" ("PD").  See Ford Mem. at 4; Customs' Mem. at 3.

Ford incorrectly marked the CF 214 checkbox for the Complaint Entries as NPF instead of PD.  See Ford's Mem. at 5; Customs' Mem. at 5.  Customs investigated the Complaint Entries and determined that the parts used in the manufacture of trucks were dutiable at the finished truck rate of 25 percent ad valorem.  See Ford's Mem. at 6; Customs' Mem. at 5.  Thus, Ford owed additional duties of approximately 5.3 million dollars.  See id. at 6; Customs' Mem. at 5.  Customs then liquidated the entries at the 25 percent rate, which Ford timely paid and protested.  See Ford's Mem. at 6-7; Customs' Mem. at 5.

On January 22, 1992, Ford filed a protest action in this Court

challenging Customs' assessments on the Complaint Entries.[2]  See
Ford's Mem. at 7.  After much litigation, on April 12, 2002, the
Court of Appeals for the Federal Circuit ("CAFC") held that
Customs' investigation was unreasonable and that the "entries must
be deemed liquidated under 19 U.S.C. § 1504(a)."  Ford IV, 286 F.3d
at 1343.  As a result this court further ordered that Customs
"refund to Ford Motor Company the increase in duties assessed
together with interest from the date of payment of the increased
duties to the date of reliquidation."  Ford VI, 26 CIT at 1292.

During the above mentioned proceedings, Ford drafted letters
waiving the statute of limitations period in 19 U.S.C. § 1621 on
ten separate occasions in response to a request from Customs.  See
Ford's Mem. at 8; Customs' Mem. at 24.  The first nine waivers,
dated between November 5, 1990, and February 15, 2002, were signed
by Customs "acknowledging receipt and acceptance."  See Ford's Mem.
at Ex. I.  In the tenth letter, dated January 13, 2003, Customs
crossed out the words "and acceptance."  See Ford's Mem. at Ex. I.
Customs followed up with a letter dated January 22, 2003, informing

---

[2]    The relevant facts in this case have been heavily
litigated in Ford Motor Co. v. United States ("Ford I"), 21 CIT
983, 979 F. Supp. 874 (1997), Ford Motor Co. v. United States
("Ford II"), 157 F.3d 849 (Fed. Cir. 1998), Ford Motor Co. v.
United States ("Ford III"), 24 CIT 775, 116 F. Supp. 2d 1214
(2000), and Ford Motor Co. v. United States ("Ford IV"), 286 F.3d
1335 (Fed. Cir. 2002), Ford Motor Co. v. United States ("Ford V"),
26 CIT 1246 (Oct 18, 2002), vacated by Ford Motor Co. v. United
States ("Ford VI"), 26 CIT 1292 (Oct 28, 2002).

Ford that under its current procedures, Customs now "only acknowledge[s] receipt of waivers." <u>See</u> Ford's Mem. at Ex. I.  On April 12, 2004, Customs amended its original penalty notice to include a claim for civil penalties and duties under 19 U.S.C. § 1592(d) demanding that Ford repay duties in the amount of $5,275,329.  <u>See</u> Ford's Mem. at Ex. D.  Subsequently, Ford moved requesting dismissal of the case at bar.

## II.  Contentions of the Parties

### A.  Ford's Contentions

Ford argues that Customs, in commencing the present action, is disregarding the CAFC's decision in <u>Ford IV</u>, and as such, issue preclusion prevents further litigation.  <u>See</u> Ford's Mem. at 2. Ford stresses that "[t]he assessment of duties on the Complaint Entries, and the reasonableness of Customs' actions and investigation of Ford with respect to those entries, was exhaustively litigated" during the past decade.[3]  Ford's Mem. at 1. Ford states that both this court and the CAFC made a number of findings of fact and conclusions of law in the prior action which involved the Complaint Entries.  <u>See</u> <u>id.</u> at 2.  Ford notes that the CAFC held in <u>Ford IV</u> that the length of Customs' investigation of the Complaint Entries was unreasonable, and as a result, Ford

---

[3]     <u>See</u> <u>supra</u> footnote 2 for a list of the cases.

received duty refunds of $5,275,379 with interest. See id. at 7. Ford further contends that the CAFC decision indicates that the Complaint Entries have been liquidated by operation of law in accordance with 19 U.S.C. § 1504. See id. While admitting that "the instant action is a claim for penalties and duties under [19 U.S.C. §1]592, and not an importer's claim for duty refunds under 19 U.S.C. § 1514, as was the prior action," Ford argues that the operative facts between both the prior and the current actions are essentially the same. Id. at 12. Ford further asserts that the present case should be dismissed as its continuation would go against public policy because it calls for the relitigation of prior findings and holdings by the courts. See id. at 13. Ford stresses that if the CAFC felt that Customs' 592 penalty case had merit, the CAFC would not have ordered a duty refund in Ford IV. See id. at 29. Ford rationalizes that the only reasonable conclusion to be drawn from Ford IV is that the CAFC intended not only to award Ford a duty refund, but to preclude the present penalty action. See id.

Ford further argues that there was no actual loss of revenue, rather Customs can only seek a potential loss of revenue. See Ford's Mem. at 15-18. Ford contends that 19 U.S.C. §§ 1514 & 1592(a) state that if the loss of revenue claim did not result from a violation of § 1592(a) and if there are no lawful duties to be

restored, then recovery actions are barred. See id. at 18-19. Ford stresses that when Customs liquidated the Complaint Entries at 25 percent ad valorem in 1989, it paid these duty increases. See id. at 19. Ford argues that its protest action under 19 U.S.C. § 1514, and the CAFC holding which returned the duty increases to Ford, do not change the fact that Customs received lawful duties owed when it rate advanced the Complaint Entries. See id. Thus, Ford concludes that the duties Customs now seeks are not lawful duties to which Customs is entitled. See id.

Furthermore, Ford contends the errors that it made on the CF 214s were not fraudulent. See Ford's Mem. at 23. Ford points out that Customs' past characterizations are inconsistent with its present fraud action because it previously described Ford's conduct as a "mistake of law." Id. at 23. Additionally, Ford contends that even if fraud is found under 19 U.S.C. § 1592(4)(a), penalties can not exceed 100 percent of the lawful duties owed because it made a prior disclosure to Customs. See id. at 16. In a letter dated February 14, 1986, Ford disclosed the CF 214 error to Customs. See Ford's Mem. at Ex. A. Customs then began its civil fraud investigation under 19 U.S.C. § 1592 in August of 1986. See Ford's Mem. at 15. Since Ford's letter disclosed the CF 214 error before Customs began its investigation, Ford argues that it made a valid prior disclosure which limits them to a maximum liability of

$5.3 million dollars.  See id. at 16.

Finally, Ford argues that the case should be dismissed as the statute of limitations has run on both claims for penalties and duties.  See Ford's Mem. at 30.  Ford claims that Customs refused to accept its tenth waiver offer by striking the words "and accepted" from the waiver.  See id. at 24.  Previous to the tenth waiver, Customs had always signed the waivers with the language "acknowledged and accepted" intact.  See id.  The ninth waiver expired on April 7, 2003.  See id.  In addition, Ford argues that the scope of the waivers were limited only to penalties.  See id. at 26. Ford contends that because Customs' request for a waiver did not include the collection of unpaid duties, it never issued a waiver applying to such duties.  See id.  Accordingly, Ford concludes that as the ninth waiver regarding penalties "acknowledged and accepted" by Customs expired in 2003, and as there was never a waiver issued by Ford dealing with unpaid duties, the statute of limitations has expired on both issues.  See id. at 26-28.  Therefore, this case should be dismissed.  See id. at 26-28.

### B.    Customs' Contentions

Customs replies that Ford has failed to establish that duties are not owed on the Complaint Entries.  See Customs' Mem. at 2. Specifically, Customs asserts that it is not barred from seeking

duties as a result of the issue preclusion or the statute of limitations arguments raised by Ford. See id. at 1. Customs argues that in Ford IV the CAFC ruled on "whether the Government properly extended the liquidations of the entries under [19 U.S.C. §] 1504, and whether Ford's failure to pay duties before entering the truck engines into the FTSZ constituted a correctable clerical error under [19 U.S.C. §] 1520(c)." Id. at 21. Customs claims that the prior action concerned its conduct when extending the liquidations and Ford's actions when it placed its merchandise in its FTSZ. See id. "Ford's culpability when it withdrew its merchandise from the FTSZ," which is at issue here "was simply not addressed." Id. (emphasis retained). Customs asserts that the CAFC has yet to rule on Ford's culpability as it relates to the § 1592 penalty action. See id. at 21. Customs asserts that issue preclusion or collateral estoppel, applies only when the identical issue was actually litigated in a prior proceeding and the losing party was afforded a full and fair opportunity to litigate its position. See id. at 16. Customs argues that Ford IV and the present action differ substantially enough to bar Ford's argument of issue preclusion. See id. at 16.

Customs further contends that its § 1592 complaint is not precluded by the statute of limitations. See Customs' Mem. at 22-29. Customs argues that waivers of statutes of limitations are

unilateral acts that do not require acceptance from the non-waiving party. See id. at 22. Thus, Customs asserts that when it struck the word "accepted" from Ford's tenth waiver, it did not diminish or cancel the waiver's effect. See id. at 24-25. Furthermore, Customs asserts, the waivers are unlimited in scope because they "contain no exclusions with respect to unpaid duties" and as such, the waivers do not exclusively apply to penalty issues. Id. at 27. Customs then concludes that since Ford waived the statute of limitations in its tenth waiver, set to expire on April 7, 2005, and Customs filed the present action on April 6, 2005, its § 1592 complaint is not precluded by the statute of limitations. See id. at 28-29. Furthermore, as the CAFC has not previously addressed the present § 1592 penalty action, Ford's motion to dismiss should be denied. See id.

## III. Analysis

### A. The Statue of Limitations for Filing a 19 U.S.C. § 1592 Complaint has Expired.

A legal waiver, such as a waiver of a statute of limitations "is an intentional release of a known right" in which the following elements must be met: "1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right." Broad. Satellite

_Int'l, Inc. v. Nat'l Digital Television Ctr., Inc._, 323 F.3d 339, 345 (5th Cir. 2003). Customs is required to publish notice of any modification to long standing policy or practice in the Customs Bulletin. _See_ 19 U.S.C. § 1625(c) (2001). Treasury Decision 76-33 states that Customs "has the authority to accept an offer to 'waive' the running of the period of limitation . . . if it appears that further administrative consideration would promote final disposition of the matter." T.D. 76-33, 41 Fed. Reg. 4,302 (Jan. 29, 1976). Treasury Decision 90-11 altered T.D. 76-33 by stating that "[a]bsent compelling circumstances, Customs will not, as a matter of policy, favorably entertain offers to waive the statute for a shorter period of time than the two-year period." T.D. 90-11, 55 Fed. Reg. 3,682 (Feb. 2, 1990). Customs had, however, exercised its right to accept waiver offers of under 24 months when it accepted Ford's ninth waiver dated February 15, 2002, although it only covered a period of 12 months. _See_ Ford's Mem. at Ex. I.

In an internal Customs memorandum ("June Memo"), dated June 16, 1999, the Chief of the Penalties Branch of the Office of Regulations & Rulings advised Fines, Penalties and Forfeitures Officers that "submission of a waiver request represents a unilateral act of the submitting party, not requiring acceptance by Customs." _See_ Customs' Mem. at Ex. 11. Customs later issued Treasury Decision 01-65 in September of 2001, which it claims

reiterates the language from June Memo. See Customs' Mem. at 25; see also T.D. 01-65, 66 Fed. Reg. 48,170 (Sept. 18, 2001). Treasury Decision 01-65 states that Customs Headquarters would delegate to Fines, Penalties and Forfeiture Officers the authority to "acknowledge waivers of the statute of limitations from parties who might otherwise be entitled to assert the statute of limitations as a defense against civil suit." T.D. 01-65, 66 Fed. Reg. 48,170. The June Memo explicitly contains language revoking the "acceptance" requirement, and states that Customs will treat waivers as unilateral acts. See Customs' Mem. at Ex. 11. The June Memo also contains a new sample waiver form reflecting this alteration. See id. Treasury Decision 01-65, however, contains no such language. See T.D. 01-65, 66 Fed. Reg. at 48,170-71.

An executive agency, such as Customs, must be held to the standard by which it claims "to be judged." Vitarelli v. Seaton, 359 U.S. 535, 546 (1959)(Frankfurter, J., concurring in part and dissenting in part). "Accordingly, if [agency action] is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." Id. at 546-47. Customs asked for a waiver of the statute of limitations from Ford soon after it issued Ford a pre-penalty notice. See Customs' Mem. at Ex. 2. All subsequent ten Ford letters of waiver continued to contain the language "I hereby

acknowledge receipt and acceptance of the above waiver" printed above the Customs' signature line. See Ford's Mem. at Ex. I. Customs accepted Ford's first waiver on November 5, 1990. See id. The ninth waiver, dated February 15, 2002, was the last letter which Customs signed and dated without making any modification to the waiver language. See Ford's Mem. at Ex. I. Customs altered the tenth waiver, signed January 17, 2003, by striking out the word "acceptance." See id. Customs additionally sent a letter dated January 22, 2003, advising Ford that it now only "acknowledge[s] receipt of waivers." See id. Customs had, however, continued to both "acknowledge and accept" Ford's waivers over two years after it issued the June Memo changing its acceptance policy. See Customs' Mem. at Ex. 11. By selectively enforcing the June Memo, Customs was not holding itself to the policy change that it claims it was enforcing. Furthermore, Customs never published a revocation of its previous policy relating to acceptance of waivers as required by 19 U.S.C. § 1625. See T.D. 01-65, 66 Fed. Reg. 48,170 (T.D. 01-65 as published in the Federal Register does not specifically reference Customs' shift to unilateral acceptance of waivers.). As such, Ford's tenth waiver letter was never accepted by Customs. Accordingly, the ninth and last valid waiver ended on April 7, 2003. Therefore, the statute of limitations had expired when Customs filed the present action. The case at bar is dismissed in its entirety. See 19 U.S.C. § 1621.

**B.    Customs is Not Entitled to Relief under 19 U.S.C. § 1592(d).**

As the statute of limitations has expired, the dismissal of this case renders moot the question of whether Ford committed fraud, negligence or gross negligence under 19 U.S.C. § 1592(a) (1982).  Even if the statute of limitations had not expired, Customs would still not be entitled to a repayment of duties in the amount of $5,275,329 under 19 U.S.C. § 1592(d) (1982).  Customs' duty repayment request matches the dollar amount that the CAFC and this court ordered to be refunded to Ford.  See Customs' Mem. at Ex. 4; Ford IV, 286 F.3d at 1343; Ford VI, 26 CIT at 1292.  19 U.S.C. § 1592(d) states that "if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, [the Customs Service] shall require that such lawful duties be restored, whether or not a monetary penalty is assessed."  19 U.S.C. § 1592(d).  The eleven Complaint Entries were liquidated on December 1, 1989, with duties assessed at the rate of 25 percent ad valorem.  Ford I, 979 F. Supp. at 878.  The court held that "Ford timely protested the liquidations and ultimately paid the additional duties assessed."  Id.  Customs' repayment of duty claims under 19 U.S.C. § 1592(d) ceased upon Ford's timely payment of duties following the December, 1989 liquidations because the United States was no longer deprived of lawful duties.  The court held that the 25 percent ad valorem duties paid on the

Complaint Entries were not lawful duties to which Customs was entitled to because Customs' fraud "investigation and the manner in which Customs conducted the investigation [was] unreasonable." <u>Ford IV</u>, 286 F.3d at 1343.  Since Customs is not entitled to any further lawful duties on the Complaint Entries, Customs cannot seek relief under 19 U.S.C. § 1592(d).


### CONCLUSION

The Court holds that Customs has proven no set of facts in support of its claim which would entitle it to relief.  Customs' claims under 19 U.S.C. § 1592 extinguished when the statute of limitations expired.  For the foregoing reasons, Ford's motion to dismiss is granted.  Judgment will be entered accordingly.


                                    _____/s/ Nicholas Tsoucalas_____
                                         NICHOLAS TSOUCALAS
                                           SENIOR JUDGE


Dated:     January 13, 2006
           New York, New York