# United States Court of Appeals for the Federal Circuit

2006-1479

UNITED STATES,

Plaintiff-Appellant,

v.

FORD MOTOR COMPANY,

Defendant-Appellee.

David A. Levitt, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellant.  With him on the brief were Peter D. Keisler, Assistant Attorney General, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Kathleen Bucholtz, Attorney, United States Customs and Border Protection, of Chicago, Illinois.

Charles J. Cooper, Cooper & Kirk PLLC, of Washington, DC, argued for defendant-appellee.  With him on the brief were Vincent J. Colatriano and Nicole Jo Moss.  Of counsel on the brief were Robert B. Silverman, David M. Murphy, and Frances P. Hadfield, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, New York; and Paulsen K. Vandevert, Ford Motor Company, of Dearborn, Michigan.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2006-1479

UNITED STATES,

Plaintiff-Appellant,

v.

FORD MOTOR COMPANY,

Defendant-Appellee.

_____

DECIDED:  August 17, 2007

_____

Before SCHALL, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

GAJARSA, <u>Circuit Judge</u>.

This is a waiver and issue preclusion case.  The issues before us are whether the government was required to accept Ford Motor Company's ("Ford") waiver of a statute of limitations defense in order for the waiver to take effect and whether the government is barred by issue preclusion from pursuing its claims for civil penalties pursuant to 19 U.S.C. § 1592 for Ford's alleged fraud.  Because we find that the government's claims are not barred by the statute of limitations in 19 U.S.C. § 1621 or by our decision in <u>Ford IV</u>, we vacate the Court of International Trade's decision to dismiss Counts I, II, and III of the government's complaint.  However, because the government was not deprived of any lawful duties by Ford's allegedly unlawful conduct

as required by § 1592(d), we affirm the Court of International Trade's dismissal of Count IV of the government's complaint.

## I.    BACKGROUND

This appeal derives from a dispute involving import duties at Ford's Foreign Trade Subzone ("FTSZ")[1] in Louisville, Kentucky.  The relevant facts are set forth in one of our previous opinions in this case, <u>Ford v. Motor Co. v. United States</u>, 286 F.3d 1335, 1336-39 (Fed. Cir. 2002) ("<u>Ford IV</u>").  Ford's Louisville FTSZ operated for three months, between November of 1985 and February of 1986.  During those three months, Ford received eleven entries of engines and transmissions from abroad.  The engines and transmissions could be used interchangeably for cars and trucks.  The merchandise was incorporated into finished cars and trucks at Ford's assembly plant located within the Louisville FTSZ, and the finished cars and trucks were subsequently withdrawn for entry into the United States.

In 1985 and 1986, the duty rate for foreign-made engines and transmissions was 3.3% ad valorem, the duty rate on finished imported cars was 2.6% ad valorem, and the duty rate on finished imported trucks was 25% ad valorem.  By establishing its Louisville FTSZ, Ford intended to take advantage of the duty differential between the unassembled car and truck parts and the assembled cars and trucks.  Under the duty rates in place when Ford entered its merchandise, the optimal strategy for Ford was to import engines and transmissions into its Louisville FTSZ and then separate the

---

[1]    A FTSZ is an area inside the United States that may receive treatment under the Customs laws as a territory outside the United States.  At the FTSZ, importers can choose to pay duties on goods either at the rate applicable to the foreign merchandise in its condition as admitted into a zone, or if used in manufacturing or

merchandise used for cars from the merchandise used for trucks. In order for Ford to receive the benefit of the duty rates applicable to its FTSZ, the regulations required Ford to file Customs Form 214 designating each part entering the Louisville FTSZ as either a car part or a truck part. After making the designations, Ford could then pay duties on truck parts as they entered the FTSZ at the duty rate of 3.3% ad valorem, thereby avoiding the 25% duty rate for assembled trucks. Ford could also defer paying duties on car parts until the assembled car emerged from the plant, at which time Ford could pay the duty rate for the assembled car of 2.6% ad valorem, applying that rate to the car parts.[2]

However, when Ford filled out Customs Form 214, it incorrectly designated that each transmission and engine imported into the Louisville FTSZ was a part for an assembled car product. Consequently, for all eleven entries, Ford paid an estimated duty rate on the basis of the 2.6% ad valorem rate for car parts. Thus, to the extent that it meant to treat any of its entries as unassembled truck parts in order to receive the benefit of the 3.3% duty rate as opposed to the 25% duty rate, Ford failed to pay duties for any truck parts, as required by the regulations. See 19 C.F.R. § 146.22.

---

processing, the rate applicable to the emerging product. See Ford Motor Co. v. United States, 286 F.3d 1335, 1336-37 (Fed. Cir. 2002).

[2] For example, if an engine with a value of $1000 is treated as a truck part, Ford would pay a duty of $33 when the engine entered the FTSZ; if the engine is treated as a "completed car" Ford would pay a duty of $26 when the finished car entered domestic commerce. See Ford Motor Co. v. United States, 157 F.3d 849, 852 (Fed. Cir. 1998) ("Ford could pay the duty rate of 2.6% (for completed cars) on the imported engines and transmissions for cars, and could continue paying the duty rate of 3.3% on the imported parts for trucks."); 15 C.F.R. § 400.1(c) ("[T]he importer ordinarily has a choice of paying duties either at the rate applicable to the foreign material in its condition as admitted into a zone, or if used in manufacturing or processing, to the emerging product.") (emphasis added).

Ford reported its error to Customs. In July of 1986, Customs concluded that the proper duty rate on the truck parts received at Ford's FTSZ was the 25% ad valorem duty rate applicable to assembled trucks. As a result, Customs found that Ford owed approximately $5.3 million in additional duties. Customs also referred Ford's error to its fraud investigation office.

In August of 1986, pursuant to 19 U.S.C. § 1592, Customs initiated a civil fraud investigation, which continued until at least March of 1990. On the basis of its ongoing fraud investigation, Customs issued three one-year extensions of the statutory one-year liquidation deadline as permitted under 19 U.S.C. § 1504(b). Pursuant to 19 U.S.C. § 1504(a), an entry of merchandise that Customs does not liquidate within one year of the date of entry is deemed liquidated by operation of law at the rate of duty asserted by the importer at the time of entry unless Customs properly extends the limitations period as provided by 19 U.S.C. § 1504(b). Almost four years after Ford's eleventh entry, on December 1, 1989, Customs liquidated the merchandise designated by Ford as truck parts in its eleven entries at the duty rate of 25% ad valorem, applicable to assembled trucks.

Ford timely protested the liquidations, contending that because Customs' three liquidation extensions were not "reasonable" as required by 19 U.S.C. § 1504(b), the eleven entries of engines and transmissions were deemed liquidated by operation of law at the duty rate asserted on importation, 3.3% ad valorem. Customs denied Ford's protest, and Ford timely paid the $5.3 million in additional duties and initiated an action in the Court of International Trade, challenging the liquidations. See Ford IV 286 F.3d at 1338-39.

In Ford IV, we reversed the Court of International Trade's holding in favor of the government, which held that the government's manner of conducting the fraud investigation and the length of the investigation were both reasonable. We reversed the Court of International Trade, holding that the liquidations were not properly extended under § 1504(b) because "Customs' delay in pursuing the fraud investigation and its resulting delay in liquidating the entries were not reasonable." Id. at 1341. We found that Customs' fraud investigation had taken a total of 44 months (from August of 1986 until March of 1990). We concluded that the 44-month long investigation was unreasonable in this case because the government did almost no substantive work during the first 30 months of the 44 months and because there were two periods of inactivity totaling 22 months. Id. at 1343. Moreover, we found that it was during the 30-month period of almost no activity that Customs had issued all three extensions of liquidation under § 1504(b)(1). Id. For these reasons, we held that Customs' delay was unreasonable and that Customs had not properly extended the liquidation of Ford's eleven entries. Id. As a result, we held that Ford's eleven entries were deemed liquidated under 19 U.S.C. § 1504(a) and that Customs was therefore required to return the $5.3 million of additional duties to Ford. Id. at 1343.

During the lengthy liquidation proceedings, Ford drafted ten consecutive letters waiving the statute of limitations period in 19 U.S.C. § 1621, which applies to government actions under 19 U.S.C. § 1592. The first nine waiver letters were dated between November 5, 1990 and February 15, 2002. Each waiver letter contained a signature line for Customs to "acknowledge receipt and acceptance" of the waiver pursuant to Treasury Decision 90-11. Customs signed the first nine waivers. In the tenth waiver letter, however, Customs crossed out the words "and acceptance" and sent

Ford a follow-up letter explaining its new procedure to "only acknowledge receipt of waivers." Ford's tenth waiver letter extended the statute of limitations for 24 months until April 7, 2005.

On April 6, 2005, the government filed a § 1592 action against Ford in the Court of International Trade. Counts I through III of the government's complaint sought civil penalties based on fraud, gross negligence, and negligence pursuant to § 1592(c). Count IV sought "the restoration of lawful duties of which the United States has been deprived, in the amount of $5,275,329" pursuant to § 1592(d). Ford filed a Rule 12(b) motion to dismiss the government's complaint for failure to state a claim upon which relief can be granted based on: 1) the government's failure to accept Ford's tenth waiver thereby letting the statute of limitations expire; and 2) issue preclusion in light of our decision in Ford IV.

The Court of International Trade granted Ford's motion to dismiss, agreeing with Ford on both grounds. United States v. Ford Motor Co., 414 F. Supp. 2d 1264, 1270-71 (Ct. Int'l Trade 2006). The Court of International Trade held that the statute of limitations in § 1621 had expired, and therefore, the government's § 1592 claims were extinguished as a matter of law. Id. at 1271. The Court of International Trade also held that notwithstanding the expiration of the statute of limitations, the government was still not entitled to a repayment of the $5.3 million in duties under 19 U.S.C. § 1592(d) because the government's request matched the dollar amount that this court in Ford IV ordered to be refunded to Ford and because this court in Ford IV had found that Customs was not entitled to any additional duties beyond the duties assessed by the deemed liquidation statute, 19 U.S.C. § 1504(a). Id.

2006-1479                    6

The Court of International Trade entered final judgment on January 13, 2006, dismissing the government's complaint for failure to state a claim upon which relief may be granted. On April 18, 2006, the Court of International Trade denied the government's motion for reconsideration. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. ANALYSIS

We review de novo the Court of International Trade's decision to dismiss a complaint for failure to state a claim upon which relief may be granted. Cf. N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994) (reviewing de novo a motion for judgment on the pleadings). Accordingly, this court reviews the record and will not dismiss a complaint for failure to state a claim upon which relief may be granted unless it appears beyond doubt that the complaining party can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss based on the pleadings, this court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. See Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

### A. Waiver

Ford argues that the government's complaint should be dismissed because the statute of limitations has run on both claims for penalties and for duties. Ford asserts that Customs refused to accept its tenth waiver by striking the words "and accepted" from the waiver. Because Ford's tenth waiver was not effective and because Ford's ninth waiver expired on April 7, 2003, two years before the government filed its § 1592 complaint, Ford contends that the government's complaint is barred by the statute of limitations.

Ford's argument is based on the assumption that its waiver letter was an offer that had to be "accepted" by the government. The Supreme Court, however, has clearly stated, "a waiver is not a contract." Stange v. United States, 282 U.S. 270, 276 (1931) (citing to Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 466 (1930)). Rather, a waiver is "a voluntary, unilateral waiver of a defense." Id. (concluding that the insertion of an agency's signature was not intended to convert a waiver into a contract, but instead, to serve a purely administrative function).

Ford stated in its tenth waiver letter that it "knowingly and voluntarily" "waive[d] the period of limitations contained in title 19, United States Code, section 1621 . . . with respect to the eleven (11) Customs entries . . . for a period of twenty-four (24) months, commencing April 7, 2003, or until April 7, 2005." **JA 400082**. Ford further agreed to "not assert any statute(s) of limitations defense in any section 1592 action brought by the United States Government concerning the referenced eleven (11) entries with respect to the twenty-four (24) month period for which the statute of limitations is hereby waived." **JA 400081**.

We hold that Ford's tenth waiver was an express, voluntary, and unilateral act that alone was sufficient to extend the § 1621 statute of limitations period until April 7, 2005. The government's acknowledgement or acceptance of Ford's waiver was not required to give effect to Ford's waiver of the statute of limitations defense. Accordingly, we reverse the Court of International Trade and hold that the statute of limitations does not bar the government from properly pursuing its § 1592 claims.

## B. Issue Preclusion

Ford's second argument is based on issue preclusion.  More specifically, Ford contends that the government is barred from pursuing its § 1592 claims because of the preclusive effect of this court's decision in Ford IV.  Ford argues that even though the government's complaint arises under 19 U.S.C. § 1592 as a claim for penalties and duties and does not arise as an importer's claim for duty refunds under 19 U.S.C. § 1514 as was Ford's action in Ford IV, the operative facts between both the prior and the current actions are essentially the same.  Ford concludes that the government is therefore barred by issue preclusion because the present case would entail relitigating prior findings and holdings.  Ford argues that if this court supposed that Customs' § 1592 claims had merit, we would not have ordered a duty refund in Ford IV.  Ford speculates that the only reasonable conclusion to be drawn from Ford IV is that this court intended not only to award Ford a duty refund, but to preclude the present penalty action.  We disagree.

In Ford IV, our holding was limited to the issue in that case—whether the government had properly extended the one-year liquidation deadline pursuant to § 1504(b).  We found that because the government had extensively delayed its investigation of Ford's alleged fraud, both the manner and length of time of the government's fraud investigation were unreasonable.  Ford IV, 286 F.3d at 1343.  Consequently, we held that the government had not properly extended the liquidation of Ford's eleven entries under § 1504(b) and that the entries were therefore deemed liquidated pursuant to 19 U.S.C. § 1504(a).

Nowhere in Ford IV did this court address the merits of the government's § 1592 claims.  See id. at 1335-43.  Ford IV simply decided that because of the government's

unreasonable delay, Ford's eleven entries were deemed liquidated by operation of law under § 1504. As an appeals court, "this court does not review that which was not presented to the [trial] court." Sage Prod., Inc. v. Devon Indus. Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997). The complaint in Ford IV was filed by Ford, not the government, pursuant to 19 U.S.C. § 1514, which is the provision provided to importers to challenge Customs' liquidations. In its § 1514 complaint, which this court reviewed in Ford IV, Ford sought to recover the approximately $5.3 million it paid to the government as allegedly excess duties. Ford IV, 286 F.3d at 1336. On appeal, therefore, the only issue before this court in Ford IV was the issue of whether Customs had properly liquidated Ford's eleven entries. Because this court in Ford IV did not address any of the merits of the government's § 1592 claims in any respect, the government is not precluded by Ford IV from pursuing its claims at the Court of International Trade. Thus, the Court of International Trade erred in as much as it dismissed the government's § 1592 claims on the preclusive effect of the issues litigated in Ford IV.

## C. Statutory Construction

Even though the government is not barred by the statute of limitations or by this court's decision in Ford IV from pursuing its § 1592 claims, the government is barred from recovering the $5.3 million in additional duties alleged in Count IV of its complaint pursuant to § 1592(d).

To understand why the government is barred from recovering duties under § 1592(d), it is helpful to look at the statutory provisions set forth in 19 U.S.C. § 1592. Subsection (a) prohibits entry of merchandise into the United States "by fraud, gross negligence, or negligence" by submission of materially false information regardless of whether the government is deprived of duties. Subsections (c)(1), (c)(2), and (c)(3) set

out the maximum civil penalties imposed on an importer based upon fraud, gross negligence, or negligence. Subsection (d) mandates:

> Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties, taxes, or fees <u>as a result of</u> a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.

19 U.S.C. § 1592(d) (emphasis added). Thus, if the court finds a violation of § 1592 (a), the government can seek two types of money damages: 1) civil penalties pursuant to § 1592(c); and 2) a restoration of any lawful duties pursuant to § 1592(d).

The government's complaint includes four counts all based on the allegation that Ford violated § 1592(a) by acting fraudulently, grossly negligently, and negligently with respect to the eleven entries. <u>See</u> Complaint at ¶¶ 20-30. Counts I-III request civil <u>penalties</u> as set forth in §§ 1592(c)(1), (c)(2), and (c)(3). <u>Id.</u> at ¶¶ 20-28. Count IV requests a restoration of the approximately $5.3 million in additional <u>duties</u>, which the government alleges it was deprived of by Ford's allegedly unlawful conduct. <u>Id.</u> at ¶¶ 29-30.

However, because Ford's eleven entries were deemed liquidated by operation of law, the government is precluded from recovering any duties beyond the duties it is permitted to recover pursuant to § 1504. Section 1592(d) limits the government's recovery of lawful duties to those duties that it was deprived of "as a result of" a violation of § 1592(a). In this case, however, the $5.3 million in duties the government claims it is entitled to collect pursuant to § 1592(d) are the duties that this court determined were unlawful by operation of § 1504. <u>See</u> <u>Ford IV</u>, 286 F.3d at 1343.

In <u>Ford IV</u>, we held that the $5.3 million that Ford had paid to Customs in additional duties were unlawful duties because Ford's entries had been deemed

liquidated by operation of law pursuant to § 1504. As a result, we concluded that Customs was only permitted to collect the amount of duties asserted upon Ford's merchandise at the time of entry into the United States. We held that Ford's entries had been deemed liquidated despite Customs' attempt to extend the one-year liquidation deadline because Customs' had improperly extended the one-year statute of limitations by unreasonably delaying its fraud investigation.

Thus, under § 1592(d), the government has not been "deprived of lawful duties, taxes, or fees <u>as a result of a violation of</u> subsection (a)." 19 U.S.C. § 1592(d) (emphasis added). Rather, the government has been deprived of the $5.3 million in duties it seeks by operation of § 1504. If anything, the government's own delay in pursuing its fraud investigation against Ford has deprived it of a claim under § 1592(d).

### III. CONCLUSION

For the foregoing reasons, we hold that the government's § 1592 claims are not barred by the statute of limitations in § 1621 or by our decision in <u>Ford IV</u>. Thus, we vacate the Court of International Trade's decision to dismiss Counts I, II, and III of the government's complaint, and we remand these Counts to the Court of International Trade for a determination of the merits. However, because the government was not deprived of any lawful duties by Ford's allegedly unlawful conduct as required by § 1592(d), we affirm the Court of International Trade's dismissal of Count IV of the government's complaint.

<u>VACATED-IN-PART, AFFIRMED-IN-PART, and REMANDED</u>

No costs.